# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21-CR-589 (RDM)** |
| | : | |
| **JOHN RICHTER,** | : | |
| | : | |
| | : | |
| Defendant. | : | |

## REPLY BRIEFING RE: AIDING AND ABETTING

John Richter hereby replies to the government's response in opposition (ECF No. 144) to his supplemental briefing re: aiding in abetting (ECF No. 141). Mr. Richter will limit his reply to addressing the government's arguments,[1] and otherwise relies on the arguments raised in his supplemental brief.


I. **The government failed to provide sufficient notice of its intent to pursue aiding and abetting liability against Mr. Richter, thereby creating unfair surprise**

The government largely sidesteps the arguments raised by Mr. Richter—namely whether the deliberate inclusion of 18 U.S.C. §2 in Count 1 and the deliberate exclusion of that provision from Counts 3 and 5 precludes an aiding and abetting theory of culpability on Counts 3 and 5—and instead argues the unremarkable proposition that as a general matter, 18 U.S.C. §2 need not be specifically pled. (*See* ECF No. 144 at 1-6). The cases cited by the government do not warrant denial of the motion:

➢ *United States v. Kelly*, 552 F.3d 824, 832 (D.C. Cir. 2009), as cited by the government (ECF No. 144 at 2), addressed whether a factual proffer supporting a guilty plea was

---

[1] In addressing the government's response, Mr. Richter will limit this reply to addressing the merits of the government's arguments, while avoiding *ad hominem* speculation about what the government (or its counsel) "misunderstands" about the law. *See, e.g.,* ECF No. 144 at 8, 9, 10.

sufficient and whether the defendant understood the elements of the offenses to which he pled guilty. But in *Kelly,* no aiding and abetting language was included in the indictment at all. *Id.*

➢ *United States v. Ginyard*, 511 F.3d 203, 212 (D.C. Cir. 2008), as cited by the government (ECF No. 144 at 2), dealt with whether a defendant whose conviction was reversed and remanded could be retried on an aiding and abetting theory when that count of the indictment was silent as to 18 U.S.C. §2. Once again, aiding and abetting was not pled in the indictment.

➢ *United States v. Pearson*, 667 F.2d 12 (5th Cir. 1982), as cited by the government (ECF No. 144 at 3), addressed whether aiding and abetting is a separate crime that must be charged separately. Once again, aiding and abetting was not pled in the indictment.

➢ *United States v. Lester*, 363 F.2d 68 (6th Cir. 1966) as cited by the government (ECF No. 144 at 3), addressed whether there was sufficient evidence to convict defendants of a conspiracy count when they were acquitted of the substantive offense. The Court noted that the jury could have convicted on the substantive count on an aiding and abetting theory, and there was no problem with the sufficiency of the evidence on the substantive count. Once again, aiding and abetting was not pled in the indictment.

➢ *United States v. Powell*, 652 F.3d 702, 708 n.4 (7th Cir. 2011) as cited by the government (ECF No. 144 at 3), addressed whether an aiding and abetting instruction should have been given to the jury based on the evidence and the fact that the government did not request that instruction until after two of its witnesses had testified. Once

again, aiding and abetting was not pled in the indictment.[2] Further, the government cites a portion of *Powell* which questioned whether it was possible for a defendant to be surprised by an aiding and abetting instruction. (*See* ECF No. 144 at 3-4). That portion of the opinion was *dicta*, however, and thus did not overrule two cases cited by Mr. Richter—*United States v. Tucker*, 552 F.2d 202 (7th Cir. 1977) and *United States v. Galiffa*, 734 F.2d 306 (7th Cir. 1984) (*see* ECF No. 141 at 3).

➢ *United States v. Castillo-Morales*, 351 Fed.Appx. 905, 906 (5th Cir. 2009), as cited by the government (ECF No. 144 at 4), addressed whether a defendant was unfairly surprised by an aiding and abetting instruction when the indictment included no reference to 18 U.S.C. §2. Once again, aiding and abetting was not pled in the indictment.[3]

➢ *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996), as cited by the government (ECF No. 144 at 4), finds no unfair surprise to applying aiding and abetting liability for all counts although aiding and abetting was charged for one specific count and

---

[2] The government cites *Powell, supra*, for the proposition that "[a]s the Seventh Circuit aptly put it: 'every competent member of the defense bar should be aware' that '[a]iding and abetting is not a separate crime but a fundamental principle of criminal liability.' *United States v. Powell*, 652 F.3d 702, 708 n.4 (7th Cir. 2011)." (ECF No. 144 at 3). For purposes of appeal and collateral review:
  ▪ counsel for Mr. Richter prepared to defend Count 1 on an aiding and abetting theory;
  ▪ counsel for Mr. Richter did not prepare to defend Count 3 and Count 5 on an aiding and abetting theory, based on the specific exclusion of any reference to 18 U.S.C. §2 in those Counts after its inclusion in Count 1.
Based on *Powell, supra*, the competence of Mr. Richter's counsel will need to be addressed, should Mr. Richter be convicted of Counts Three and Five.
[3] The government cites *Castillo-Morales, supra*, for the proposition that "[s]imply put, Richter 'should have anticipated that the government would request an instruction on aiding and abetting.'" (ECF No. 144 at 4 [*citing United States v. Castillo*, 351 F. App'x 905, 906 (5th Cir. 2009) (citing *United States v. Botell*, 991 F.2d 189, 192 (5th Cir. 1993) (rejecting claim of unfair surprise because indictment did not foreclose possibility of conviction as aider and abettor and evidence supported aiding and abetting conviction))]. Perhaps so. But as discussed *ante* (*see* Fn. 1), counsel for Mr. Richter in fact did not anticipate an aiding and abetting instruction or liability for Counts 3 and 5.

not for the other counts. But that opinion is of dubious value since it never

addresses the main issue—whether the inclusion of aiding and abetting liability in

one count combined with the exclusion of such liability from other counts—created

unfair surprise.[4]

Mr. Richter brought a very specific argument that he was surprised by the argument regarding

Counts 3 and 5 that he was culpable as an aider and abettor when that theory of culpability was

specifically alleged in Count 1 while omitted from Counts 3 and 5. The government fails to address

that argument head-on, and instead largely addresses the undisputed proposition that when an

indictment is completely silent as to aiding and abetting liability, such liability may nonetheless

attach.

The government further questions whether the "unfair surprise" doctrine as discussed in

*United States v. Tucker*, 552 F.2d 202 (7th Cir. 1977) and *United States v. Galiffa*, 734 F.2d 306 (7th Cir.

1984) remains valid considering *United States v. Powell*, 652 F.3d 702 (7th Cir. 2011). (*See* ECF No.

144 at 3). The government ignores the fact that Courts within the Seventh Circuit continue to cite to

those cases. *See, e.g.*, *United States v. Vaulin*, 2017 WL 3334861 (N.D. Ill. August 4, 2017). Moreover,

the First Circuit has adopted the unfair surprise doctrine as articulated in *Galiffa, supra*, and *Tucker,*

*supra. See United States v. Sanchez*, 917 F.2d 607, 611 (1ˢᵗ Cir. 1990); *United States v. Palmer*, 203 F.3d 55,

66 (1ˢᵗ Cir. 2000)("There might be cases in which the language of the indictment so misleads a

defendant so as to prejudice an effective defense, but this is not such a case.") *See also United States v.*

*Guder*, 1992 WL 190697 at *2 (D.Kan. July 30, 1992); *United States v. Frazier*, 2023 WL 4491450 (S.D.

---

[4] The government cites *Scroger* in support of the proposition that "Richter 'knew, or should have known,' that an aiding and abetting theory was at play, given that trial evidence (produced long before trial) made it abundantly clear – based on several trial exhibits – that Richter provided Irwin with a replacement weapon, clearly *aiding* Irwin." Perhaps so. Once again, as discussed *ante* (*see* Fns. 1, 2), counsel for Mr. Richter in fact did not anticipate an aiding and abetting instruction for Counts 3 and 5.

Ill. July 12, 2023). *See also Levine v. United States,* 430 F.2d 641, 643 (7th Cir.1970) (listing cases from the Fourth, Fifth, Ninth, and Tenth Circuits supporting this rule). *Sanchez, supra,* specifically noted that it is "better practice, 'whenever a basis for a charge of aiding and abetting is anticipated before trial, ... to have the indictment framed in the alternative or at least to have noted upon it a reference to 18 U.S.C.A. § 2,' *United States v. Duke,* 409 F.2d at 671; *see also Galiffa,* 734 F.2d at 312 ('preferable' to charge 18 U.S.C. § 2 in indictment)." *Sanchez, supra,* at 611 (footnotes omitted).

A similar claim of unfair surprise was raised in this district in a January 6th case in *United States v. Grider,* 651 F.Supp.3d 1 (D.D.C. 2022). Mr. Grider was charged with Engaging in Physical Violence in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(4). Grider objected to aiding and abetting liability as violative of his due process rights since such liability was not included in the Superseding Indictment or in the proposed jury instructions. *Grider, supra,* at 18. Judge Kollar-Kotelly first noted that "most federal Courts of Appeals hold that a factfinder may rely on an aiding-and-abetting theory so long as the factfinder's reliance on such a theory does not result in an 'unfair surprise' to the defendant." *Id.* at 19. Judge Kollar-Kotelly rejected the claim that Grider was unfairly surprised because:

> The Superseding Indictment cited aiding-and-abetting liability for Count 3, the Government's Trial Brief stated that the Government would rely on this theory as to multiple counts, *see* ECF No. 136 at 11, and the Court has implicitly discussed this theory in its prior opinions in this case, *e.g.,* 617 F.Supp.3d 42, 48 ("The Affidavit also alleges that Grider handed a black helmet to another rioter to assist the rioter in breaking open the windows on the [Speaker's Lobby Door]").

*Id.* Here, the government's trial brief only mentioned that aiding and abetting was charged for violating 18 U.S.C. §1512(c)(2). *See* ECF No. 98 at 12, 13. Nowhere in the government's trial brief did it indicate that aiding and abetting liability would be argued as a basis of liability for any other charges. Moreover, in the government's proposed jury instructions, the government provided:

> Count One of the Third Superseding Indictment charges the defendants with corruptly obstructing an official proceeding, which is a violation of federal law.

Count One also charges the defendants with aiding and abetting others to commit that offense. First, I will explain the elements of the substantive offense, along with its associated definitions. Then, I will explain how to determine whether the defendants aided and abetted the offense.

Elements

In order to find the defendants guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

> First, the defendant attempted to or did obstruct or impede an official proceeding.
> Second, the defendant intended to obstruct or impede the official proceeding.
> Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.
> Fourth, the defendant acted corruptly.

…

(ECF No. 84 at 9-10). The government further provided a definition of aiding and abetting as

applied to Count 1:

## AIDING AND ABETTING

In this case, the government further alleges that the defendants committed obstruction of an official proceeding as charged in Count One, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendants committed this offense in Count One.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements as to each defendant:

> First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I have explained above.
> Second, that the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others.
> Third, that the defendant performed an act or acts in furtherance of the offense.
> Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.
> Fifth, that the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of committed obstruction of an official as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

(ECF No. 84 at 12-14). These were the only mentions of aiding and abetting liability in the

government's jury instructions, and they specifically applied to Count One only. The government

provided instructions for Counts Two-Five and omitted any mention of aiding and abetting liability.

(ECF No. 84 at 17-25). Further, a review of every order issued by the Court in this case has failed to

uncover a single order discussing aiding and abetting liability.[5] Thus, this case is fully distinguishable

from *United States v. Grider*, 651 F.Supp.3d 1 (D.D.C. 2022) because the factors relied upon by Judge

---

[5] *See* ECF Nos. 4, 8, 14, 15, minute order 10/25/21, minute order 12/6/21, minute order 3/23/22, minute order 4/19/22, ECF No. 33, minute order 1/4/23, minute order 1/11/23, minute order 1/12/23, minute order 1/18/23, ECF Nos. 4 (which noted without discussion that aiding and abetting liability was charged as a basis of liability for violation of 18 U.S.C. §1512(c)(2), 57, 61, minute order 5/25/23, minute order 6/18/23, minute order 6/28/23, minute order 7/22/23, minute order 11/6/23, minute order 11/15/23, minute orders 11/22/23, minute order 12/20/23, minute order 12/30/23, minute order 1/2/24, minute orders 1/4/24, minute order 1/23/24, minute order 1/30/24, minute orders 2/14/24, ECF No. 112, minute order 2/21/24, minute order 2/22/24, minute order 3/1/24, minute order 3/2/24, minute order 3/22/24, minute order 3/28/24, minute order 3/29/24.

Kollar-Kotelly in rejecting a claim of unfair surprise actually support Mr. Richter's claim of unfair surprise here.

The government cites *United States v. Armstrong*, 909 F.2d 1238 (9th Cir. 1990) (*see* ECF No. 144 at 5), in which the indictment cited 18 U.S.C. § 2(b), charging the defendant with willfully *causing* an act to be done, but not aiding and abetting under Section 2(a). In *Armstrong*, the Court found no unfair surprise. But *Armstrong* is a far different case, since the indictment alerted the defendant that the government was proceeding on a theory that the defendant was not a traditional direct actor, and was instead proceeding on a theory of guilt based on the actions of another.[6] Similarly, in *United States v. Ashley*, 606 F.3d 135 (4ᵗʰ Cir. 2010), the Court concluded only that " a district court does not constructively amend an indictment by giving a *Pinkerton* instruction when *Pinkerton* liability has not been charged by the grand jury." *Id.* at 143. That case is inapposite, since it involved two substantive conspiracy counts, as opposed to two substantive counts to be proved via co-conspirator liability.

The simple truth is that the unfair surprise doctrine remains the law, and the facts of this case amply support application of that doctrine. The Court should not allow Mr. Richter to be found culpable for Counts Three and Five as an aider and abettor.

## II.    Mr. Richter was prejudiced by the government's insufficient notice

The government ignores much of Mr. Richter's argument regarding prejudice. The government largely disregards the specific scenario presented here—specifically including 18 U.S.C. §2 in one count while specifically excluding it from other counts—and falls back on the familiar refrain that it need not be included at all. (*See* ECF No. 144). The government's discussion of

---

[6] Further, it is not clear that 18 U.S.C. §2(a) and 18 U.S.C. §2(b) constitute different elements—as the government implicitly assumes—or whether they only constitute different means. *See generally, Mathis v. United States*, 579 U.S. 500 (2016).

variances (ECF No. 144 at 7-8) fails to address the main point of Mr. Richter's discussion of prejudice—that had adequate notice been provided by the government, Mr. Richter would have pursued different tactics at trial and introduced additional evidence. (*See* ECF No. 141 at 3-5

### III.     Mr. Richter cannot aid and abet a completed crime

In his brief, Mr. Richter argued that the law does not allow someone to be convicted under an aiding and abetting theory if the crime he allegedly aided and abetted was complete before he took the actions constituting aiding and abetting. (ECF No. 141 at 5-6). That is an unremarkable proposition, and the government offers no arguments demonstrating that this legal proposition is incorrect.

### IV.     Mr. Richter cannot be found guilty under an aiding and abetting theory unless Mr. Irwin is guilty of Count Two and/or Count Four as a principal based on his carrying of the flagpole

In his brief, Mr. Richter argued that the law does not allow someone to be convicted under an aiding and abetting theory unless the government proves beyond a reasonable doubt that a principal committed the substantive offense. (ECF No. 141 at 6-7). That is an unremarkable proposition, and the government offers no arguments demonstrating that this legal proposition is incorrect.

### V.     Pursuing an aiding and abetting theory on Counts Three and Five would require the government to argue inconsistently

According to the government, Mr. Richter argues that the government argues that Mr. Irwin violated Count Two "only" by breaking Abel. The government further characterizes Mr. Richter's brief as claiming that the government argues that for purposes of aiding and abetting liability as to Counts Three and Five, that Counts Two and Four were "only" committed after Mr. Richter gave Mr. Irwin half of the flagpole. (ECF No. 144 at 10). Then the government claims that "Mr. Richter is

wrong." (ECF No. 144 at 10). The government also erroneously states that Mr. Richter "seeks to confine Irwin's criminal conduct to a short time-period"[7] (ECF No. 144 at 19)—to the contrary, Mr. Richter asserts that both he and Mr. Irwin are not guilty of any crimes charged in Counts One through Five.

In the end, Mr. Richter will leave it to the government—or more appropriately the Court—to determine what the government is actually arguing. Mr. Richter only seeks to prevent the government from making impermissible arguments.

The government claims that it is permitted to argue that Mr. Irwin violated Counts Two and Four by carrying either Abel, the flag pole, or both—without running afoul of duplicity principles. Assuming that position to be true, it doesn't solve the duplicity problem here. It appears that the government has argued and continues to argue that the Court can convict Mr. Irwin on Counts Two and Four based solely on his breaking of Abel. Assuming, *arguendo*, that the Court were to so find, that offense was complete before Mr. Richter took any steps to aid and abet—by handing Mr. Irwin half of the flagpole.[8] But the government also seeks to argue that Mr. Richter aided and abetted Mr. Irwin's crimes as charged in Counts Two and Four by handing Mr. Irwin half of the flagpole. Such aiding and abetting liability could only attach if Mr. Irwin committed Counts Two and Four after Mr. Richter handed him half of the flagpole. The government ignores the problem it creates by arguing **both** that

---

[7] The government characterizes that short time-period as "a period of time that was unknown to the prosecution team until days into trial." (ECF No. 144 at 10). If so, the late discovery of that evidence supports the claim of unfair surprise. The government bases much of its aiding and abetting argument against Mr. Richter by arguing that having seen Mr. Irwin violently break Abel, Mr. Richter only gave Mr. Irwin half the flagpole to arm him for similar acts. The late discovery of this evidence, in combination with the government's failure to allege aiding and abetting in Counts Three and Five (while alleging aiding and abetting in Count One) along with discussion of aiding and abetting in jury instructions for Count One but not Counts Three and Five, demonstrate that Mr. Richter was unfairly surprised by the government's arguments.

[8] The government concedes that its theory of aiding and abetting liability for Mr. Richter is based upon him handing a flagpole to Mr. Irwin. *See* ECF No. 144 at 11.

Counts Two and Four were committed **before** Mr. Richter handed Mr. Irwin the flagpole and **after** Mr. Richter handed Mr. Irwin the flagpole.

The government cannot have it both ways. An argument that Mr. Irwin committed Counts Two and Four both before Mr. Richter aided and abetted those offenses (with Abel), and after Mr. Richter aided and abetted those offenses (with the flagpole), would tacitly admit that Counts Two and Four are duplicitous. Duplicity is, after all, joinder in a single count of two or more distinct and separate offenses. *See United States v. Hubbell,* 177 F.3d 11, 14 (D.C. Cir. 1999); *United States v. Mangieri,* 694 F.2d 1270, 1281 D.C.Cir. 1982); CHARLES ALAN WRIGHT, 1A FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 142, at 7 (3d ed.1999). Mr. Richter will not presume that Counts Two and Four are duplicitous—to the contrary, he presumes that Counts Two and Four are not duplicitous.[9]

As a matter of law, the government's arguments that Counts Two and Four (as well presumably Counts Three and Five) are continuous offenses is incorrect. "[T]he doctrine of continuing offenses should be applied only in limited circumstances." *Toussie v. United States*, 397 U.S. 112 (1970). In *Toussie*, the defendant was indicted eight years after his eighteenth birthday for failing to register for the draft. At that time, there was a five-year statute of limitations for failure to register, so the issue was when that statute began to run. The defendant contended the charge could be brought only within five years of the registration period, which ended five days after his eighteenth birthday. The government claimed the offense was one that "continued to be committed each day that Toussie did not register." *Id.* at 114.

---

[9] For this reason, the government's arguments about standing are a red herring. (*See* ECF No. 144 at 12 & fn. 2). The government's untimeliness argument (*see id.*) is similarly misplaced since (a) Mr. Richter is not making a substantive duplicity challenge, and (b) the basis for any argument about aiding and abetting *viz-a-viz* duplicity only arose during trial when the video evidence about the breaking of Abel was discovered for the first time.

The Supreme Court found nothing in the Selective Service Act that manifested an intent that failure to register be a continuing offense; the Court also found nothing "inherently" continuing about the offense such as a conspiracy, where "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Id.* at 122. The Court held that failing to register for the draft was not a continuing offense and thus the five-year statute of limitations started to run once the defendant failed to register within the required period, and the defendant could not be penalized for failing to register eight years later. The Supreme Court held that an offense should not be deemed continuous "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* This passage makes clear that the analysis should turn on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue. *See United States v. Johnson*, 145 F.Supp.3d 862, 870 (D.S.D. 2015).

There is nothing about the language of 18 U.S.C. §1752(a)(1)-(2) that evidences intent by Congress that it be considered a continuing offense:

> (a) Whoever—
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

*Id.* Both subsections describe discrete acts and not some sort of ongoing conspiracy or scheme to bring about a desired result.

But even if the analysis did turn on the specific conduct, the government nevertheless errs factually in arguing that Counts Two and Four were a continuing offense. (*See* ECF No. 144 at 13).[10]

---

[10] The government also stretches the facts beyond recognition in an effort to support guilty verdicts

After Abel was broken,[11] a period of time passed before Mr. Richter handed Mr. Irwin half of the flagpole. During that time, Abel was put away in Mr. Irwin's backpack.[12] There is no evidence that broken Abel was carried with the intent to use it as a weapon after it was broken. Thus, the facts do not support a continuing offense as the government claims. Instead, the facts support, at most, two separate purported violations of Counts Two and Four.[13]

Because the facts would not support a continuing offense, any argument that Mr. Irwin violated Counts Two and Four by breaking Abel while also maintaining that Mr. Richter aided and abetted Counts Two and Four by handing Mr. Irwin the flagpole would be inconsistent.[14] The cases cited by the government address situations in which defendants were charged with possessing multiple guns in a single count. (*See* ECF No. 144 at 15). But those cases involved situations in which the

---

against Mr Richter on Counts Three and Five. (*See* ECF No. 144 at 9). The government claims that while Mr. Irwin broke Abel, "Richter stood at the ready behind him" as "back up." Admittedly, Mr. Richter stood behind Mr. Irwin. And as he stood, Mr. Richter did absolutely nothing. He did not say anything. And he did not do anything. The government's assumptions about Mr. Richter's mental state are purely speculative. Contrary to the government's assertion, Mr. Richter absolutely carried his flag "in an ordinary manner." (*See* ECF No. 144 at 9).

[11] The government erroneously claims that "[Mr.] Richter participated in Irwin's aggressive outburst…" ECF No. 144 at 9. How? By standing still, saying nothing, and doing nothing? It is one thing to characterize facts in a manner designed to support one's case—it's quite another to create facts out of whole cloth.

[12] In an effort to shoehorn the facts into a continuing offense, the government appears to argue, at least implicitly, that so long as Mr. Irwin kept the pieces of Abel, he continued to carry a deadly weapon. The facts do not support this argument. Abel was broken into (at least) two pieces. Abel was splintered and no longer constituted a solid piece of wood. Moreover, Mr. Irwin put Abel into his backpack. Certainly, had Mr. Irwin intended to use a broken Abel as a weapon, he would not have put Abel away in his backpack—which he was wearing on his back. Had he intended to carry and use a broken Abel as a weapon, he would have kept Abel in his hands, where it was readily accessible. Keeping it on his back made it difficult to quickly gain access to. The fact that Abel was broken and stowed away in a backpack shows that Mr. Irwin lacked the intent to carry and use broken Abel as a weapon. Since he did not, there is a temporal break between the carrying of an unbroken Abel and the carrying of a flagpole such that they cannot be considered part of a continuing offense.

[13] Mr. Richter does not concede that either Abel or the flagpole support convictions for Counts Two and Four, or Three and Five under an aiding and abetting theory—but it is clear that those items were not part of a continuing offense due to a break in time.

[14] They cannot both be true because presumably Counts Two and Four are not duplicitous.

multiple firearms were all possessed at the same time, so there was no temporal break between the possession of one firearm and the possession of another firearm. *See, e.g., United States v. Verrecchia*, 196 F.3d 294 (1ˢᵗ Cir. 1999); *United States v. Korey*, 2015 WL 2381377 (W.D. Pa. May 19, 2015)(firearm and ammunition in a single count); *United States v. Pollock,* 757 F.3d 582 (7ᵗʰ Cir. 2014)(multiple high-capacity rifle magazines in a single count); *United States v. Talbert*, 501 F.3d 449 (5ᵗʰ Cir. 2007)(multiple firearms in a single count); *United States v. DeJohn*, 368 F.3d 533, 542 (6ᵗʰ Cir. 2004)(multiple firearms found in residence and charged in single count found not to be error, but noting that "when the particular factual circumstances create 'a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts,' a jury unanimity instruction is still required."); *United States v. Drayton*, 51 Fed.Appx. 95 (4ᵗʰ Cir. 2002)(multiple firearms in single count).

The government seeks to portray Mr. Irwin's actions as a single, continuing offense. But ordinarily, "[a] crime is complete when each element of the crime has occurred." *United States v. Smith,* 740 F.2d 734, 736 (9th Cir.1984). The Supreme Court, however, announced the "continuing offense doctrine" in *Toussie v. United States,* 397 U.S. 112 (1970). *See id.* at 115, 120 (holding that an offense is "contining" for statute of limitations purposes when "the nature of the crime involved" requires as much, such as when the offense "clearly contemplates a prolonged course of conduct"). With these cases as a backdrop, it appears that possession-type offenses are likely considered continuing offenses, as opposed to completed offenses the moment the possession is established along with any necessary *mens rea* element.

That being said, "even continuing offenses are completed at some point." *United States v. Hernandez,* 189 F.3d 785, 791(9th Cir.1999)(holding that while 8 U.S.C. §1326 was a continuing offense, it was necessarily complete when an alien was first discovered and identified by the authorities). Here, as a factual matter, the continuing offense charged in Counts Two and Four

necessarily ceased when Abel was broken. Mr. Irwin put Abel away, and thus he no longer evidenced an intent to carry or use Abel as a deadly or dangerous weapon. A period of time then passed until Mr. Richter handed Mr. Irwin half of the flagpole. Those two events—Mr. Irwin's breaking of Abel and his subsequent possession of half of the flagpole—do not concur in time. The government's arguments about Mr. Irwin's subsequent use of the flagpole conflates a continuing course of conduct with a continuing offense. *See United States v. Silkowski*, 32 F.3d 682, 689–90 (2d Cir.1994) (distinguishing continuing course of conduct from "continuing offense;" in defining the "offense" for restitution purposes, the court held that the statute of limitations confined the offense to conduct within the last five years because it was not a "continuing offense," even though it was a continuing course of conduct—namely, fraudulent receipt of social security checks over a 9–year period).

While the government claims that Mr. Irwin carried the flagpole for similar purposes that he carried Abel, that similarity of purpose does not create a continuing offense. While arguably it might reflect a continuing course of conduct, such a course of conduct does not allow the government to argue consistently that Mr. Irwin is guilty of Counts Two and Four based on Abel while Mr. Richter is guilty of Counts Three and Five based on aiding and abetting Mr. Irwin in handing him a flagpole. Those arguments remain impermissibly consistent.

**Conclusion**

The government provided no notice that it sought to convict Mr. Richter of Counts Three and Five based on aiding and abetting liability. By including aiding and abetting language in Count One and omitting it from Counts Three and Five, the government affirmatively misled Mr. Richter regarding its intent to seek aiding and abetting liability in Counts Three and Five—thereby creating unfair surprise. Mr. Richter cannot aid and abet a completed offense, and thus could only be guilty of

15

aiding and abetting based on Mr. Irwin's carrying of the flagpole. However, having elected to argue that Mr. Irwin completed the offenses charged in Counts Two and Four by smashing Abel, the government is precluded from arguing inconsistently (or duplicitously) as to Mr. Richter. To convict Mr. Richter under an aiding and abetting theory for Counts Three and Five, the government would first have to prove beyond a reasonable doubt that Mr. Irwin committed Counts Two and Four by carrying half of the flagpole—an argument that would necessarily be prohibited as inconsistent and duplicitous.

For these reasons, the government is precluded from pursuing aiding and abetting liability in Counts Three and Five.

DATED: April 18, 2024               Respectfully submitted,

MATTHEW CAMPBELL
Federal Public Defender
*s/ Matthew Campbell*
Office of the Federal Public Defender
1336 Beltjen Rd., Suite 202
St. Thomas, USVI 00802
Tel: (340) 774-4449
Email: Matt_Campbell@fd.org
Counsel for Defendant John Joseph Richter